**NOT FOR PUBLICATION**

FILED & ENTERED

MAR 31 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Reaves    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>ALLANA BARONI,<br><br>       Debtor. | Case No.: 1:12-bk-10986-MB<br><br>Chapter 11<br><br>Adv. Proc. No.   1:13-ap-01069-MB |
| ALLANA BARONI,<br><br>     Plaintiff,<br><br>       vs.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>     Defendant. | **MEMORANDUM OF DECISION DENYING MOTION FOR LEAVE TO FILE PLAINTIFF'S SECOND AMENDED COMPLAINT [ADV. DKT. 147]** |

**MEMORANDUM OF DECISION**

In this adversary proceeding, plaintiff Allana Baroni ("Baroni" or "Plaintiff"), a reorganized chapter 11 debtor, seeks leave to amend her First Amended Complaint ("FAC") and file a Second Amended Complaint ("SAC") for the reasons stated in her *Motion for Leave to File Plaintiff's Second Amended Complaint* (Adv. Dkt. 147, "Motion for Leave to Amend") filed on June 19, 2016. Defendant Nationstar Mortgage, LLC ("Nationstar") opposed the Motion for Leave to Amend, which was heard on October 24, 2016. Appearances were as noted in the record. Having considered the parties' papers filed in support of and in opposition to the Motion for Leave to Amend, oral arguments as well as other pleadings and papers on file in this adversary proceeding, as well as the main bankruptcy case (the "Case"), Plaintiff's Motion for Leave to Amend is denied. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### *The Bankruptcy Case*

Plaintiff Allana Baroni commenced this bankruptcy case on February 1, 2012. Case Dkt. 1. The case originally was filed under chapter 13 of the Bankruptcy Code, but subsequently was converted to chapter 11. Case Dkt. 10, 17. Nationstar filed a proof of claim (the "POC") on September 17, 2012, in an amount in excess of $1.4 million, asserting a secured claim against Baroni and her real property located at 3435 Rio Road, Carmel, California 93921 (the "Carmel Property"). The POC identifies Nationstar as the creditor, directs payments to be sent to Nationstar and directs notices to be sent to Nationstar. POC 9-1. The POC includes a promissory note (the "Note") apparently signed by Baroni's non-debtor spouse, James Baroni, in favor of Platinum Capital Group ("PCG") and includes an indorsement page with indorsements in favor of Lehman Brothers Banks, FSB, Lehman Brothers Holdings, Inc. ("Lehman Bros.") and what appears to be a blank indorsement. Baroni disputes the claim filed by Nationstar, arguing that Nationstar does not own, and otherwise is not entitled to enforce, the Note and Carmel deed of trust (the "DOT") on which the POC is premised.

1    On April 15, 2013, the Court entered its order confirming Debtor's Second Amended Plan

2    of Reorganization.  Case Dkt. 423.  Baroni's Second Amended Plan of Reorganization is combined

3    in a single document with her Second Amended Disclosure Statement (collectively, the "Plan") and

4    was filed on March 20, 2013.   Case Dkt. 376.  In the course of trying to restructure the debts

5    encumbering her various real properties, including the Carmel Property, Baroni alleges that she

6    discovered the lenders claiming an interest in her real properties engaged in loan securitization and

7    pledged their position as first deed of trust lienholders into multiple income streams, fabricating

8    notes and conveying them to numerous domestic and offshore trusts.  By doing so, Baroni alleges

9    that the lenders violated numerous state and federal statutes, as well as their common law duties to

10    her.  Baroni discloses and preserves potential causes of action arising from these allegations in

11    Exhibit 2 to her Plan.  With respect to the Carmel Property, Exhibit 2 to her Plan expressly

12    discloses that she has potential claims for [a] Violations of the Real Estate Settlement and

13    Procedures Act (RESPA); 12 U.S.C. § 2601 *et seq*., [b] Violations of the Truth-in-Lending Act

14    (TILA) 15 U.S.C. § 1638, [c] Violations of the Fair Debt Collection Practices Act (FDCPA); 15

15    U.S.C. § 1692 *et seq*., [d] Violations of Fair Business and Profession Code, [e] Fraudulent

16    Inducement, [f] Negligence, [g] Intentional Infliction of Emotional Distress, [h] Breach of

17    Fiduciary Duties, [i] Slander of Title, [j] Common Law Fraud and [k] Unjust Enrichment against

18    [1] Nationstar, [2] Aurora Loan Services LLC . . . and [3] "All Parties listed on Schedule D who

19    are associated with this property, even if as 'Notice Only.'"  Case Dkt. 376, Exh. 2 at 000004.

20    Plaintiff's original and Amended Schedule D, in turn, identify the secured creditors associated with

21    the Carmel Property as Aurora Loan Services, LLC ("Aurora Loan"), Lehman Bros., PCG, and

22    Wells Fargo Bank, N.A. as Trustee for SARM 2004-5.  Case Dkt. 19 at 20, 161 at 7-8.   The Plan

23    contemplates, among other things, that Baroni would file a post-confirmation adversary proceeding

24    asserting her various causes of action regarding the Carmel Property and disputing the POC filed

25    by Nationstar.

26    ***The Adversary Proceeding***

27    On April 3, 2013, Baroni filed her complaint against Nationstar (the "Complaint"),

28    commencing this adversary proceeding.  Adv. Dkt. 1.  The Complaint alleges three claims for

1    relief:  [1] [To] Determine the Validity of Claimant's Lien; [2] For a Declaratory Judgment

2    Disallowing the POC in its Entirety, and [3] For Restitution / Unjust Enrichment to recover all the

3    loan payments by Baroni to Nationstar.   Nationstar sought dismissal of Baroni's Complaint under

4    Rule 12(b)(6).[1]   Prior to the hearing on that motion, on June 5, 2013, Baroni amended her

5    complaint (the "First Amended Complaint") alleging four claims for relief:  [1] [To] Determine the

6    Nature, Extent and Validity of Lien / Declaratory Relief FRBP § 7001, 28 U.S.C. § 2201; [2] Quasi

7    Contract / Unjust Enrichment; [3] Violation of 15 U.S.C. § 1692, *et seq*. (the "FDCPA") and [4]

8    Violation of California Business and Professions Code § 17200, *et seq*. (the "UCL")  Adv. Dkt. 10.

9    Nationstar moved for dismissal of the FAC under Rule 12(b)(6), which request was denied. Adv.

10    Dkt. 37.  Nationstar then answered the FAC.  Adv. Dkt. 31.

11         On January 22, 2014, the Court entered its Scheduling Order pursuant to Rule 16(b) which

12    established, among other things, a June 30, 2014, cut-off date to amend pleadings and join parties.

13    Adv. Dkt. 40, ¶2.c.  The deadlines in the original Scheduling Order were twice extended by orders

14    approving stipulations between Baroni and Nationstar and the operative scheduling order

15    ("Amended Scheduling Order") established a final cut-off date of December 31, 2014, to amend

16    the pleadings and to join parties.  Adv. Dkt. 53, ¶ 4.  The Amended Scheduling Order also

17    established March 31, 2015, as the last day for the parties to file pre-trial motions.

18         In the meantime, on September 24, 2014, Nationstar timely filed its Motion for Summary

19    Judgment ("MSJ") on the FAC.  Adv. Dkt. 50.   On December 5, 2014, the Court entered summary

20    judgment in favor of Nationstar on all causes of action in the FAC.  Adv. Dkt. 74.  Baroni timely

21    appealed from that judgment.

22         On November 10, 2015, the Bankruptcy Appellate Panel issued its memorandum (the "BAP

23    Memorandum"), affirming summary judgment on the Third Cause of Action for violations of the

24    FDCPA, reversing summary judgment on the remaining claims and remanding for further

25    proceedings.  Following a status conference on April 29, 2016, the Court entered its Order

26

27    _____

[1]   Unless otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

28

1   determining that the scope of issues on remand were limited to three causes of action and, as to the

2   First Cause of Action for Declaratory Relief, limited to three issues:  [1] Whether the original Note

3   "was duly endorsed in blank and made payable to the bearer and, therefore, whether Nationstar

4   qualifies as a holder of the [N]ote and a person entitled to enforce the Note" and [2] Whether

5   "Wells Fargo, as trustee of a securitization trust, owns the [N]ote and therefore qualifies as a

6   nonholder in possession of the [N]ote" and [3] Whether Nationstar is Wells Fargo's agent with

7   respect to the Note.  Adv. Dkt. 149.  The Court also determined that the Court would treat the

8   Second Cause of Action for Quasi Contract / Unjust Enrichment as a quasi-contract claim seeking

9   restitution.

10         On June 19, 2016, Baroni filed her Motion for Leave to Amend pursuant to Rules 15 and

11   16.  Adv. Dkt. 147.  By that motion Baroni seeks permission to join seven additional defendants –

12   PCG, Aurora Bank, FSB ("Aurora Bank"), Aurora Commercial Corp. ("Aurora Commercial"),

13   Aurora Loan, Lehman Bros., Structured Asset Securities Corp. ("SASC"), and Wells Fargo Bank,

14   N.A. as Trustee for the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through

15   Certificates, Series 2004-5 ("SARM 2004-5").  Baroni also seeks permission to add three new

16   claims for relief – Slander of Title, Violations of California Civil Code §§ 1709, 1710 and for an

17   Accounting.

18   **II.  ANALYSIS**

19         Baroni contends that Nationstar's misconduct in this adversary proceeding necessitates

20   amendment of the FAC.  The gravamen of the Motion for Leave to Amend is that from the time

21   Nationstar filed its POC on September 17, 2012, until the hearing on its MSJ on November 19,

22   2014, Nationstar "maintained" the POC in its own name.  At the MSJ hearing, Nationstar --

23   apparently for the first time -- asserted that it was acting as an agent for Wells Fargo as trustee for

24   SARM 2004-5.  Baroni characterizes this as gamesmanship, as "Nationstar's moving target

25   assertions of the identity of the creditor" and "hide-the-creditor tactics."  Motion for Leave to

26   Amend, at 13.  Baroni also contends that the BAP Memorandum necessitates amendment of the

27   FAC as those findings "put into question the entire chain of ownership of the Note," the DOT and

28   custody of the Note and DOT.  Specifically, Baroni seeks to amend because Nationstar [1] failed to

4

1   establish the Note was ever "securitized into SARM 2004-5", [2] failed to establish Nationstar is an

2   agent for SARM 2004-5 and [3] failed to demonstrate how the Note could be "re-indorsed" (as

3   Nationstar allegedly argued to the Bankruptcy Appellate Panel) and failed to produce documents in

4   connection with the alleged "re-indorsement." Nationstar's gamesmanship and failure to prove up

5   its claim "have caused [Baroni] to seek out the creditor through the amended complaint." *Id.*

6       In her Motion for Leave to Amend, Baroni argues that leave to amend a pleading under

7   Rule 15(a) is to be granted freely and with "extreme liberality." *DCD Programs, Ltd. v. Leighton*,

8   833 F.2d 183, 186 (9th Cir. 1987); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Relying on *Shipner*

9   *v. Eastern Air Lines, Inc.*, 868 F.2d 401, 406-07 (11th Cir. 1989), Baroni also contends that,

10   because justice requires her proposed amendment, the burden shifts to Nationstar to convince the

11   court why justice requires denial of leave to amend.

12       Baroni's reliance on Rule 15(a), and liberal standards under that rule, are misplaced.

13   Because the Amended Scheduling Order established December 31, 2014, as the last day to join

14   parties and amend the pleadings, Rule 15(a) does not govern Baroni's Motion for Leave to Amend.

15   Once a trial court establishes a timetable for amending pleadings by entering a scheduling order

16   pursuant to Federal Rule of Civil Procedure 16, the ability of a plaintiff to amend her complaint is

17   "governed by Rule 16(b), not Rule 15(a)." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

18   607-08 (9th Cir. 1992). "'Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad

19   faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule

20   16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the

21   amendment. . . if that party was not diligent, the inquiry should end.'" *In re Western States*

22   *Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) quoting *Johnson*, 975 F.2d

23   at 609.

24       In considering the diligence of the party seeking amendment, the Ninth Circuit has held that

25   "carelessness is not compatible with a finding of diligence and offers no reason for relief."

26   *Johnson*, 975 F.2d at 609. A plaintiff's failure to prosecute an action by propounding no discovery,

27   failing to respond to discovery and failing to designate experts can demonstrate a lack of diligence

28   and a lack of good cause under Rule 16(b). *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki*

1    *Kaisha*, 218 F.R.D. 667, 672 (C.D. Cal. 2003).  Similarly, a party fails to demonstrate diligence

2    when she belatedly seeks leave to amend to "assert new theories" when "the facts and the theory

3    have been known to the party seeking amendment since the inception" of the case.  *Acri v. Int'l*

4    *Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *Coleman v.*

5    *Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (plaintiffs failed to show diligence required

6    by Rule 16(b) where plaintiffs had expert's statistical report prior to previously-filed amended

7    complaint and district court did not abuse its discretion in denying their motions to further amend

8    to include allegations and theories based on statistical report); *Walker v. Benter*, 41 F.Supp. 2d

9    1067, 1070-71 (C.D. Cal. 1999) (finding lack of diligence where some of the new allegations in the

10   proposed amended complaint were known to plaintiff prior to lawsuit and some were known to

11   plaintiff long before the filing of the motion for leave to amend).  By contrast, a party seeking to

12   modify a scheduling order to amend the pleadings or join parties establishes good cause by

13   showing that the deadline established by the scheduling order "cannot reasonably be met despite

14   the diligence of the party seeking the extension."  *Johnson*, 975 F.2d at 609.

15       As detailed below, Baroni has not demonstrated diligence and therefore good cause does

16   not exist to modify the Amended Scheduling Order and grant her Motion for Leave to Amend.  Her

17   proposed SAC is based on facts known by, or available to, her long before she filed her Motion for

18   Leave to Amend and certainly at the time she filed her FAC.  To the extent that any facts alleged in

19   her SAC were not known to her when she filed her FAC, Baroni chose to ignore opportunities to

20   discover relevant information through the discovery procedures that became available to her upon

21   the filing of her original Complaint in 2013.  In its Memorandum, the Bankruptcy Appellate Panel

22   noted that "there is no evidence in the summary judgment record that [Baroni] took any affirmative

23   action to conduct or compel discovery during the entire time her adversary proceeding was

24   pending.  Nor did she comply with the applicable procedures for requesting additional time to

25   conduct discovery."  Memorandum, p. 33:9-13.  Baroni's failure to conduct any discovery in this

26   adversary proceeding is not compatible with a finding of diligence. See *Johnson*, 975 F.2d at 609;

27   *Matrix Motor*, 218 F.R.D. at 672.

28

## A. **Additional Parties**

As detailed below, for five of the seven new parties Baroni seeks to join in this adversary proceeding, Baroni knew the material facts regarding each defendant at least as early as June 5, 2013, when she filed her FAC.  In some cases, Baroni had actual knowledge of the facts regarding the new defendant prior to the commencement of this adversary proceeding.  In her Motion for Leave to Amend, Baroni offers no explanation for why she failed to name any of these seven new defendants as a party to her FAC and she fails to demonstrate why she could not have moved to join the seven new defendants prior to the December 31, 2014, deadline to do so.  In each instance, Baroni has not demonstrated any diligence regarding the joining of these parties and has not established good cause to permit her to join any of them as defendants to this proceeding at this late stage after entry of judgment in favor of Nationstar and an appeal.

### 1.    Platinum Capital Group

By her Motion for Leave to Amend, Baroni seeks to add PCG as a new defendant.  PCG is identified as the obligee on the Note attached to the POC filed on September 17, 2012.  Baroni's Plan filed on March 20, 2013, specifically identifies, and preserves, potential causes of action related to the Carmel Property that she may assert against "[a]ll Parties listed on Schedule D who are associated with this property, even if as 'Notice Only.'"  Case Dkt. 376, Exh. 2, at 000004.  Baroni expressly identifies PCG as a secured creditor with respect to the Carmel Property in schedules she filed on October 3, 2012.  Case Dkt. 161, p. 8.   Baroni's FAC, filed on June 5, 2013, includes numerous allegations that PCG was the "lender" with respect to the debt memorialized by the Note and DOT.  FAC, ¶¶ 15, 19, 20, 21.[2]  Baroni therefore knew of PCG and its identity as the original lender identified in the Note secured by the Carmel Property at least since September 17, 2012, which is more than two years before the December 31, 2014 deadline to amend pleadings and nearly four years before she filed her Motion for Leave to Amend.

---

[2]   By contrast, Baroni's proposed SAC (attached as Exhibit 1 to the Motion for Leave to Amend), fails to offer any material allegations regarding specific conduct or omissions by PCG and instead merely includes PCG in a list of parties transferring the Note.  See e.g., SAC, ¶¶ 19, 28, 51, 61.

## 2. Aurora Bank FSB and Aurora Loan Services, LLC

Baroni also seeks to add Aurora Bank and Aurora Loan as new defendants to this adversary proceeding. Baroni's original Schedule D, which she filed on February 29, 2012, identifies Aurora Loan as a secured creditor regarding the Carmel Property. Case Dkt. 19, p. 20. Baroni's Plan specifically identifies, and preserves, potential causes of action related to the Carmel Property that she may assert against "Aurora Loan Services LLC". Case Dkt. 376, Exh. 2, at 000004. In her declaration filed January 10, 2013, Baroni alleges that Aurora Loan was "the institution acting as the servicer of the debt [secured by the Carmel Property] from February 26, 2004 – September 2002." Case Dkt. 258, ¶5. Baroni's FAC is replete with allegations regarding Aurora Loan and Aurora Bank, reciting document requests she served on Aurora Loan in its capacity as master servicer of SARM 2004-5 and describing and incorporating documents she received from Nationstar identifying Aurora Bank as an assignee of the DOT. FAC, ¶¶ 12, 15, 16, 20, 21, 22. Baroni's original complaint attaches as Exhibits B, D and G correspondence from Aurora Loan and Aurora Bank's counsel regarding Baroni's document requests. The original complaint includes as Exhibit F a "screen shot" identifying Aurora Bank as the servicer of the loan. Thus, at the time that she filed her FAC in 2013, Baroni was sufficiently knowledgeable about Aurora Bank and Aurora Loan and their roles with respect to the Note and DOT that she included numerous allegations about them in FAC but chose not to name them as defendants.

## 3. Lehman Brothers Holdings, Inc.

Baroni seeks leave to join Lehman Bros. as a new defendant. Nationstar's September 17, 2012 POC includes the indorsements page of the Note which includes indorsements to Lehman Bros. Baroni scheduled Lehman Bros. in connection with the Carmel Property in her Amended Schedule D filed on October 3, 2012. Case Dkt. 161, p. 7. As noted above, Baroni's Plan specifically listed potential causes of action against all parties listed on Schedule D, which necessarily includes Lehman Bros. Baroni's FAC includes allegations re: Lehman Bros. in

1   connection with the indorsements.  FAC, ¶ 15.[3]  Baroni therefore knew of Lehman Bros. and the

2   indorsement of the Note to Lehman Bros. at least since September 17, 2012, which is more than

3   two years before the December 31, 2014 deadline to amend pleadings and nearly four years before

4   she filed her Motion for Leave to Amend.

5                   5.      Wells Fargo as Trustee for SARM 2004-5.

6          On October 3, 2012, Baroni filed her Amended Schedule D which includes "Wells Fargo

7   Bank NA as Trustee for SARM 2004-5" in connection with her Carmel Property.  Case Dkt. 161,

8   p. 11.  In her  declaration filed January 10, 2013, Baroni alleges that Aurora was servicing the debt

9   secured by the Carmel Property "for Wells Fargo Bank N.A. as Trustee for Structured Adjustable

10  Rate Mortgage Loan Trust 2004-5."  Case Dkt. 258, ¶6.  Baroni's original complaint attaches as

11  Exhibit G correspondence between Aurora, as servicer, and Wells Fargo, as trustee regarding

12  property insurance renewals and includes a renewal certificate identifying "Wells Fargo Bank,

13  National Association, as Trustee" as the mortgagee of the debt secured by the Carmel Property.

14  Adv. Dkt. 1, p. 69.  Baroni's FAC alleges that the Note and DOT were pledged to SARM 2004-5

15  and that Wells Fargo is the trustee of SARM 2004-5.   FAC, ¶¶ 16-17.  Although Baroni complains

16  in her Motion for Leave to Amend that Nationstar waited until the November 19, 2014 hearing on

17  its MSJ to disclose Wells Fargo as trustee of SARM 2004-5 "as the true creditor," it is evident she

18  was aware of Wells Fargo's role at least since she filed her Amended Schedule D in 2012.

19  Although Baroni seeks to characterize the "disclosure" of Wells Fargo as trustee of SARM 2004-5

20  as a bombshell at the November 19, 2014 hearing, these were facts known to Baroni two years

21  earlier and long before the December 31, 2014 deadline to amend pleadings.  Baroni's Motion for

22  Leave to Amend makes no attempt to explain why she did not name Wells Fargo as trustee for

23

24  [3]   In her proposed SAC, Baroni's allegations regarding Lehman Bros. are limited to including it in
25  discussions of the indorsement page of the Note and in a list of parties transferring the Note, which
    are allegations already included in the FAC.  Compare SAC, ¶¶ 23, 61 and FAC, ¶15.  The only
26  arguably "new" allegation regarding Lehman Bros is the extremely general statement that Lehman
    Bros [and SASC] "unjustly enriched themselves by using Plaintiff's Property to capitalize on the
27  lucrative mortgage backed securities market."  SAC, ¶ 74.

28

1  SARM 2004-5 when she filed either her original complaint or her FAC in 2013 but instead waited

2  until 2016 to seek to join it to this proceeding.

3              6.    Aurora Commercial Corp and Structured Asset Securities Corporation

4          Baroni seeks to join two new parties who – unlike the other five new defendants – are not

5  already included in the allegations of her FAC.  In her proposed SAC, Baroni alleges that SASC

6  "unjustly enriched" itself using Plaintiff's Property "to capitalize on the lucrative mortgage backed

7  securities market."  SAC, ¶ 74.  Like Lehman Bros, Aurora Bank and Aurora Loan, she alleges that

8  it is in a line of entities who have been transferred the Note.  SAC, ¶ 61.  Her proposed SAC makes

9  no other allegations regarding SASC and there are no facts suggesting Baroni is in need of relief

10 against SASC.  Significantly, she does not allege that SASC is attempting to collect the same debt

11 Nationstar seeks to collect by its POC.  Instead, SASC is merely one of many transferees of the

12 Note and it is unclear why Baroni would need to name SASC as a defendant to establish that

13 Nationstar cannot enforce the POC.

14         Baroni alleges that Aurora Commercial is the assignee of the DOT pursuant to an

15 assignment recorded in 2015 and that it lacked authority to assign the DOT to SARM 2004-5.

16 SAC, ¶¶ 56, 57.  Baroni's FAC already includes an allegation that there is no evidence that Aurora

17 Bank assigned the DOT to Nationstar.  FAC, ¶ 22.  The allegations in her proposed SAC merely

18 add detail to already existing allegations.  Denial of her Motion for Leave to Amend does not

19 preclude Baroni from offering the 2015 assignment as evidence in support of the allegations

20 already included in her FAC, in support of her theory that Nationstar cannot enforce the DOT.

21         As demonstrated above, Baroni's assertion that Nationstar's "hide-the-creditor" tactics are

22 grounds for leave to amend is without merit.  Even if, as she contends, Nationstar waited until

23 November 2014 to explain that it is the servicer for Wells Fargo as trustee for SARM 2004-5,

24 Baroni had actual knowledge that Wells Fargo was the trustee of SARM 2004-5 and that SARM

25 2004-5 asserted that it was entitled to enforce the Note since at least January 10, 2013 when she

26 testified to those facts under penalty of perjury.  Case Dkt. 258, at 9-10, ¶6.  Baroni's knowledge of

27 these facts predates the filing of her original Complaint, and her FAC.  Her failure to include the

28 defendants she now seeks to join demonstrates a lack of diligence.

1    Finally, her assertion that "Nationstar's moving target assertions of the identity of the

2    creditor . . . have caused [Baroni] to seek out the creditor through the amended complaint" betrays

3    her ulterior motives in prosecuting this adversary proceeding.  Motion for Leave to Amend, at 13.

4    Baroni seeks leave to amend essentially so that she can continue her fishing expedition to locate the

5    "one true creditor" entitled to enforce the Note and DOT and, hopefully, ultimately, to demonstrate

6    that no such "true creditor" can be found, leaving her Carmel Property free and clear.  She seeks to

7    join seven new defendants to test each of them to determine whether they are the "true creditor"

8    entitled to enforce the Note and DOT.  This adversary proceeding, however, is not an avenue for

9    such a fishing expedition.  Throughout her bankruptcy case, Nationstar is the only party to assert a

10   claim secured by the Carmel Property.  The bar date for any other creditor to do so has long since

11   passed.  More than three years have elapsed since Baroni confirmed her Plan, the terms of which

12   now govern the debt secured by the Carmel Property.  As such, the only real issue in this adversary

13   proceeding is whether Nationstar – the only claimant for this debt – is entitled to enforce the Note

14   and DOT and, if not, whether it is liable to Baroni for damages based upon either a restitution

15   theory or for violations of California's UCL.  Permitting Baroni to join seven new defendants and

16   fundamentally transform this adversary proceeding (which has already proceeded to judgment and

17   an appeal from that judgment) will only frustrate and delay a determination of whether Nationstar

18   is entitled to enforce this debt.

19         **B**.  **Additional Claims for Relief**

20         By her Motion for Leave to Amend, Baroni also proposes to add three new claims for relief.

21   Because she has failed to establish good cause to add any new defendants to this proceeding, her

22   proposed new claims for relief must be considered only with respect to the original defendant,

23   Nationstar.  As with her request to join new parties, Baroni's request to add new claims for relief is

24   without merit.  Baroni fails to demonstrate that even with reasonable diligence she could not have

25   sought leave to add her new claims for relief prior to the December 31, 2014, deadline to do so and

26   therefore fails to establish good cause to permit her to add these claims at this late stage of the

27   proceeding.

28

MEMORANDUM OF DECISION

1                   1.    Accounting

2       Baroni's proposed cause of action for an Accounting demands that Nationstar properly

3   account for all the loan payments made in connection with the Note during an eight-year period.

4   Proposed SAC, ¶¶ 98-101.  Baroni's *Notice of Motion and Motion Pursuant to Fed. R. Bankr. P.*

5   *2004 for the Production of Documents and the Oral Examination of the Person Designated by*

6   *Nationstar Mortgage, LLC to Be Most Knowledgeable of the Topics Identified Herein* ("Nationstar

7   2004 Exam Motion") filed on January 10, 2013, demanded an accounting for all "payments sent

8   and received – including all third party payments – and all consideration or value paid as a result of

9   any debt associated with the Baronis or the property" and demanded that Nationstar produce "[f]or

10  each payment received . . . a complete payment history, including but not limited to the date and

11  amounts of all the payments that have been made on all alleged debt . . . " as well as other

12  categories of documents regarding payments related to the Note and the Carmel Property.  Case

13  Dkt. 258, at 14, 19.  Thus, Baroni knew she had a claim for relief for an accounting against

14  Nationstar since at least January 10, 2013, but failed to include this claim for relief in either her

15  original Complaint or her FAC.  Baroni has not established good cause to allow her to assert this

16  untimely claim for relief.

17                2.    Slander of Title

18      Baroni also seeks to add a cause of action for Slander of Title.  Baroni identified slander of

19  title as one of her potential causes of action regarding the Carmel Property in her Plan filed on

20  March 20, 2013, and before the commencement of this adversary proceeding, yet Baroni failed to

21  include this cause of action in either her original Complaint or her FAC.  Case Dkt. 376, Exh. 2 at

22  pg. 000004.  Baroni bases her proposed Slander of Title claim on a December 12, 2011 assignment

23  of the DOT she describes as the "Aurora Assignment" and a 2015 assignment of the DOT she

24  describes as the "SARM 2004-5 Assignment."  The relevant facts regarding the Aurora Assignment

25  alleged in the proposed SAC were previously alleged by Baroni in the FAC.  SAC, ¶54; FAC, ¶¶

26  20-22.  While the SARM 2004-5 Assignment was allegedly recorded in 2015, and therefore not

27  included in her 2013 FAC, neither the proposed SAC nor her Motion for Leave to Amend identify

28  any new or additional damages she suffered as a result of the recordation of the 2015 assignment.

1  As such, these facts merely support a Slander of Title cause of action.  Baroni knew she had a

2  colorable claim for Slander of Title regarding the Carmel Property at least since March 20, 2013

3  when she filed her Plan and expressly identified Slander of Title as one of the causes of action she

4  held against Nationstar and others regarding this property.  Case Dkt. 376, Exh. 2 at 000004.

5  Despite her knowledge she held such a claim, Baroni waited to seek leave to assert this claim until

6  2016.  Baroni has been dilatory regarding her Slander of Title claim, and has failed to establish

7  good cause to allow her to bring this claim at this late stage of the proceeding.

8                  3.     Violations of California Civil Code §§ 1709, 1710

9        Baroni also seeks to add a cause of action for Violations of California Civil Code Sections

10  1709 and 1710, California's common law fraud and deceit statutes.  Baroni's proposed SAC

11  provides a laundry list of alleged misrepresentations allegedly made by the "Defendants," the

12  gravamen of which are that Nationstar is the "true creditor" entitled to enforce the POC and that it

13  filed the POC while refusing to provide an accounting, that the Note was properly transferred to

14  SARM 2004-5 and that Nationstar has authority to act on behalf of the certificate holders of that

15  trust.  Baroni alleges that all of the representations were knowingly false, she relied upon them and

16  was harmed.  No specific allegations are made regarding who represented what, when and to

17  whom, nor are there any specific allegations regarding why the representations were false or the

18  nature of any harm suffered by Baroni.  Because the allegations in support of her common law

19  fraud claims are so general, it is impossible to discern when Baroni first became aware of the facts

20  on which her common law fraud claims depend.  Baroni's Plan, however, specifically identified

21  "common law fraud" as one of her potential claims for relief relating to the Carmel Property.  Plan,

22  Exh. 2, at 000004.  Therefore, Baroni was aware of this potential cause of action at least as of the

23  filing of her Plan on March 20, 2013.

24        The vagueness of her fraud claims also demonstrates that allowing her leave to amend

25  would be futile.  Rule 9(b) requires a plaintiff averring fraud to plead the "who, what, when, where,

26  and how" of the alleged misconduct as well as what is false or misleading about the purportedly

27  fraudulent statement, and why it is false. *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106

28  (9th Cir. 2003); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.

1  2011).   Baroni's fraud claims falls short of the specificity demanded by Rule 9(b) and the Ninth

2  Circuit.  As such, granting her leave to amend to assert her fraud claims would be futile.[4]

3          Finally, the Court notes that Baroni's contention that the BAP Memorandum necessitates

4  amendment of her FAC is without merit.  In her Motion for Leave to Amend she identifies three

5  failures by Nationstar – failure to establish the Note was securitized as an asset of SARM 2004-5,

6  failure to establish Nationstar is an agent of SARM 2004-5 and failure to establish how the Note

7  could be re-indorsed.  These are failures of proof of material issues which were illuminated by the

8  BAP and a basis for its decision to partially reverse and remand.  Each of these issues is directly

9  related to causes of action which are already included in the FAC.  They are not grounds for adding

10 new causes of action.

11 **III. CONCLUSION**

12         Belated attempts to amend a complaint to assert new theories and add new parties "when

13 the facts and the theory have been known to the party seeking amendment since the inception of the

14 case" falls short of the diligence required under Rule 16.  *Acri*, 781 F.2d at 1298.  Similarly, failing

15 to propound or compel any discovery during the adversary proceeding demonstrates a lack of

16 diligence and a lack of good cause under Rule 16.  *Matrix Motor*, 218 F.R.D. at 672.  For all of the

17 reasons discussed above, Baroni has failed to establish that she acted with diligence in this

18 adversary proceeding to discover and name all of the relevant defendants and to timely assert all of

19 her causes of action.  Most of the material facts which she now seeks to allege, and the identities of

20 the seven new defendants which she seeks to join, were known to her prior to the filing of the

21 original Complaint, yet Baroni waited three years – and after judgment was entered against her and

22 the parties had fully prosecuted an appeal from that judgment – to file her Motion for Leave to

23

24 ─────────────────

[4]   Even if Baroni could establish "good cause" under Rule 16(b), she "must also demonstrate the
25 proposed amendment would be proper under Rule 15. . . . Under Rule 15, leave to amend should be
granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is
26 futile, or creates undue delay or prejudice to the opposing party. See *Foman v. Davis*, 371 U.S. 178,
182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)."  *Campion v. Old Republic Home Prot. Co.,* 861 F. Supp.
27 2d 1139, 1150 (S.D. Cal. 2012).

28

1  Amend.  During the eighteen months that this adversary proceeding was pending prior to entry of

2  judgment in favor of Nationstar, Baroni failed to propound any discovery in this adversary

3  proceeding.  Baroni's conduct is not compatible with a finding of diligence and she has failed to

4  establish good cause under Rule 16(b) to modify the Amended Scheduling Order.  The Court will

5  enter a separate order in accordance with this Memorandum of Decision.

6                                                                # # #

Date: March 31, 2017

Martin R Barash
United States Bankruptcy Judge