MARY KATE SULLIVAN (State Bar No. 180203)
ADAM N. BARASCH (State Bar No. 158220)
BERNARD J. KORNBERG (State Bar No. 252006)
ANDREW W. NOBLE (State Bar No. 245993)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
anb@severson.com

Attorneys for Creditor
NATIONSTAR MORTGAGE LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| ALLANA BARONI,<br><br>        Debtor.<br>_____<br>ALLANA BARONI,<br><br>        Plaintiff,<br><br>    vs.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>        Defendant. | Case No. 1:12-bk-10986-MB<br><br>Chapter 11<br><br>Adv No.  1:13-ap-01069-MB<br><br>**NATIONSTAR MORTGAGE LLC'S TRIAL BRIEF**<br><br>Date:    October 22, 2018<br>Time:    10:00 a.m. |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................... 2

    A.    The Baroni loan. ...................................................................................... 2

    B.    Nationstar possesses the indorsed Note. ................................................. 2

    C.    A copy of the Note was mistakenly indorsed. ......................................... 3

    D.    The current beneficial owner of the Baroni loan is U.S. Bank National
        Association, not in its individual capacity but solely as Trustee of NRZ
        Pass-Through Trust X. ............................................................................. 3

        1.    The Initial Sale of the Note to the SARM 2004-5 Trust. ............ 3

        2.    The Post-Remand Sale of the Note to the NRZ Pass-Through Trust
            X ..................................................................................................... 4

III.   PROCEDURAL HISTORY ................................................................................. 5

IV.    APPLICABLE LAW ............................................................................................ 7

    A.    Standing to enforce a secured promissory note. ..................................... 7

    B.    Nationstar is the "holder" of the Note. ................................................... 7

    C.    Nationstar is the "transferee" of the Note. ............................................. 9

V.     MS. BARONI CANNOT SHOW THAT SHE IS ENTITLED TO RESTITUTION ........ 14

VI.    STIPULATED AND DISPUTED FACTS ........................................................ 14

VII.   CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
    223 F.3d 1010 (9th Cir. 2000) ................................................................. 13

*Allen v. U.S. Bank, N.A. (In re Allen)*,
    472 B.R. 559 (9th Cir. BAP 2012) ............................................................. 7

*Anderson v. Burson*,
    424 Md. 232 (2011) .................................................................... 1, 9, 10

*Bank of New York v. Raftogianis*,
    418 N.J. Super. 323 (Ch. Div. 2010) ...................................................... 10

*Baroni v. Nationstar Mortg., LLC*,
    2015 Bankr. LEXIS 3859 (B.A.P. 9th Cir. Nov. 10, 2015) ............................. *passim*

*Cynthia Annette Riley Dudley v. S. Virginia Univ.*,
    502 B.R. 259 (Bankr. W.D. Va. 2013) ...................................................... 12

*Fed. Deposit Ins. Corp. v. Ashmore*,
    698 F. App'x 286 (6th Cir. 2017) ...................................................... 10, 11

*Fugelsang v. Fugelsang*,
    131 A.D.2d 810 (1987) ...................................................................... 13

*Inline, Inc. v. Apace Moving Systems, Inc.*,
    125 Cal.App.4th 895 (2005) ................................................................ 14

*J.E. Robert Co. v. Signature Properties, LLC*,
    309 Conn. 307 (2013) ........................................................................ 10

*Otworth v. Southern Pac. Transportation Co.*,
    166 Cal.App.3d 452 (1985) ................................................................. 14

*Peterson v. Cellco Partnership*,
    164 Cal.App.4th 1583 (2008) .............................................................. 14

*Prakashpalan v. Engstrom, Lipscomb and Lack*,
    223 Cal.App.4th 1105 (2014) .............................................................. 14

*Veal v. Am. Home Mortg. Servicing, Inc.*,
    450 B.R. 897 (9th Cir. BAP 2011) .................................................. 7, 9, 11

*Wolfe v. State Farm Fire & Casualty Ins. Co.*,
    46 Cal. App. 4th 554 (1996) ............................................................... 14

NATIONSTAR MORTGAGE LLC'S TRIAL BRIEF

**STATUTES**

Cal. Business and Professions Code
  § 17200 *et seq*..................................................................................................5, 6, 14

Cal. Civil Code
  § 1689.........................................................................................................................13

Cal. Commercial Code
  § 1201.......................................................................................................................1, 7
  § 1206...........................................................................................................................8
  § 3201...........................................................................................................................9
  § 3203.......................................................................................................................1, 9
  § 3301...............................................................................................................1, 7, 8, 9
  § 3308...........................................................................................................................8

United States Code
  Title 15, § 1692 *et seq*..............................................................................................5

**OTHER AUTHORITIES**

5 Hawkland, Miller & Harrell, *Uniform Commercial Code Series*, (2018)
  § 3-301:1.......................................................................................................................7
  § 3-203:2.....................................................................................................................10
  § 3-308:2.......................................................................................................................8

# I.  INTRODUCTION

Nationstar Mortgage LLC ("Nationstar") filed Claim 9-1 to enforce an Adjustable Rate Note from James Baroni secured by a Deed of Trust encumbering property now owned jointly by Mr. Baroni and the debtor, Allana Baroni.  Ms. Baroni initiated this adversary proceeding contesting Nationstar's authority to bring the claim.

Nationstar is entitled to enforce the Note because it possesses the "wet-ink" original Note. The California Commercial Code provides two alternative ways in which possession makes Nationstar a "person entitled to enforce" the Note.  Cal. Comm. Code § 3301.  First, Nationstar is the "holder" of the Note because it is indorsed to blank, making it bearer paper that is enforceable by whomever holds it.  Cal. Comm. Code § 1201(b)(21)(A).  The blank indorsement is affixed on the reverse page of Mr. Baroni's signature.  There is no evidence overcoming the presumption that the indorsement was duly authorized by Lehman Brothers Holdings, Inc.

But even if the Court were to disregard the indorsement, Nationstar is still a person entitled to enforce as a "nonholder in possession of the [note] who has the rights of a holder."  Cal. Comm. Code § 3301(ii).  Under this standard, a nonholder may enforce a note so long as the note was "delivered by a person other than its issuer for the purpose of giving to [Nationstar] the right to enforce" the Note.  Cal. Comm. Code § 3203(a).  This standard does not require the Court to dive into the subjective intent of the parties regarding each physical transfer of possession of the note. Instead, the Court must simply decide whether the transfer was intentional, in which the transferee assumes all rights of the transferor, or if the transfer was done by "by theft or accident," in which case the transferee may not enforce the Note.  *Anderson v. Burson*, 424 Md. 232, 248 (2011).

Nationstar will show that it was delivered the Note for the purpose of enforcing it in Ms. Baroni's bankruptcy case in the regular course of servicing this loan.  Further, Nationstar will show that when it took possession of the Note, it did so as servicer for the owner of the Note. Finally, Nationstar will show that while the loan was subsequently sold to another trust, possession of the Note has not changed since the sale.  Therefore, the evidence will demonstrate that Nationstar is in possession of the Note and that the delivery of the Note to Nationstar was not by theft or mistake.  So, even if the indorsement to blank were disregarded, Nationstar still had the

NATIONSTAR MORTGAGE LLC'S TRIAL BRIEF

right to enforce the Note and file Claim 9-1.

## II.  STATEMENT OF FACTS

**A.    The Baroni loan.**

The Adjustable Rate Note dated February 26, 2004, in the amount of $1,430,000.00, is payable to Platinum Capital Group and bears the signature of James R. Baroni (the "Note").  Trial Ex. 1.  The Note is secured by a Deed of Trust encumbering Mr. Baroni's property located at 3435 Rio Road, Carmel, CA 93921.  Trial Ex. 2.  Ms. Baroni then acquired an interest in the property securing the Note.

**B.    Nationstar possesses the indorsed Note.**

Nationstar began servicing the Baroni loan on July 1, 2012.  *See* Trial Ex. 11.  The prior servicer was Aurora Bank, FSB, whose servicing portfolio and assets were acquired by Nationstar the previous month.  Trial Ex. 25.  Aurora Loan Services, LLC, serviced the Baroni loan before Aurora Bank, FSB.  *See* Trial Ex. 13.

Nationstar frequently obtains a loan's "collateral file" when it initiates foreclosure proceedings or when a borrower contests a bankruptcy claim.  The collateral file typically contains the original promissory note, mortgage or deed of trust, and title insurance policy.  Nationstar normally forwards the collateral file to its attorney in these instances.

And so it happened here.  The collateral file for the Baroni loan was obtained by Nationstar and originally sent to its attorney of record, Adam Barasch, on or about April 25, 2013.  Trial Ex. 36.  Mr. Barasch returned the file to Nationstar, but Nationstar routed it back to Mr. Barasch on or about December 8, 2016.  Trial Ex. 37.  Mr. Barasch has held the collateral file at his firm since then.

The original custodian of record of the Baroni collateral file was LaSalle Bank National Association, which was acquired by Bank of America, N.A.  U.S. Bank National Association ("U.S. Bank") then acquired Bank of America's trust operation, and with it, custody of the Baroni collateral file.  U.S. Bank's records show that it took possession of the Baroni collateral file on March 15, 2004.  Trial Ex. 39.  The collateral file was released to the servicer on February 22, 2011.  Aurora Loan Services, LLC then sent the collateral file to its attorneys at Kahrl Wutscher

1    LLP, which responded to multiple qualified written requests from Ms. Baroni, on March 18, 2011.

2    Trial Ex. No. 35. The collateral file was returned to U.S. Bank on December 19, 2014. It was

3    released to the servicer again on November 2, 2016, several weeks before Mr. Barasch received it.

4        The collateral file contains the original Note. The Note bears three indorsements on the

5    reverse of the signature page bearing Mr. Baroni's wet-ink signature. One is from the payee of the

6    Note to Lehman Brothers Bank FSB. A second is from Lehman Brothers Bank FSB to Lehman

7    Brothers Holdings, Inc. A third is from Lehman Brothers Holdings, Inc. to blank. The collateral

8    file also contains the original Deed of Trust bearing Mr. Baroni's wet-ink signature, and a title

9    insurance policy. Trial Ex. 3.

10    **C.    A copy of the Note was mistakenly indorsed.**

11        The collateral file also contains a photocopy of the Note with the handwritten notation

12    "Copy" on the first page. The copy of the Note omits the indorsements appearing on the reverse

13    of the signature page on the original Note. Instead, the copy includes an additional page with

14    copies of the same three indorsements, but the two Lehman indorsements are configured

15    differently than on the original Note.

16        At trial, Nationstar will offer the testimony of Simon Ward-Brown, a former Aurora Bank,

17    FSB, and Aurora Loan Services, LLC, employee. Mr. Ward-Brown has no specific knowledge of

18    the Baroni loan or Note, but will describe Aurora's procedures with respect to handling original

19    promissory notes and how a copy of a promissory note could have been indorsed. Mr. Ward-

20    Brown will explain that that an Aurora employee likely pulled a copy of the Note that lacked the

21    Lehman indorsements and, not realizing it was a photocopy, applied the Lehman indorsements and

22    made a new copy with the indorsements placed on an additional page. Aurora was a Lehman

23    subsidiary and had employees authorized to sign on Lehman's behalf.

24    **D.    The current beneficial owner of the Baroni loan is U.S. Bank National Association,
       not in its individual capacity but solely as Trustee of NRZ Pass-Through Trust X.**

25

26    **1.    The Initial Sale of the Note to the SARM 2004-5 Trust.**

27        Nationstar initially serviced the Baroni loan on behalf of Wells Fargo Bank, N.A., as

28    Trustee of the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through

1    Certificates Series 2004-5 ("SARMS 2004-5").

2         The SARMS 2004-5 trust was created pursuant to a number of interlocking agreements

3    dated April 1, 2004.  A funding "Delivery Commitment Confirmation" and related documents that

4    appear in the Baroni loan origination file indicate that Platinum Capital delivered the Baroni loan

5    to Lehman Brothers Bank, FSB, after it was originated.  Trial Ex. 32.  Lehman Brothers Bank,

6    FSB then assigned its ownership interest in a pool of loans to Lehman Brothers Holdings, Inc.

7    (Trial Ex. 27), which assigned the loans to Structured Asset Securities Corporation.  Trial Ex. 28

8    The final step was a Trust Agreement pursuant to which Structured Asset Securities Corporation,

9    as depositor, transferred its ownership interest in loans identified in a Mortgage Loan Schedule to

10   Wells Fargo in its capacity as trustee of the SARMS 2004-5 trust.  Aurora Loan Services Inc. was

11   designated as the "master servicer" of the loans in the trust.  Trial Ex. 31.  The Baroni loan appears

12   on the Mortgage Loan Schedule.  Trial Ex. 29.  Notably, this chain of ownership is consistent with

13   the Note indorsements from Platinum Capital, to Lehman Brothers Bank, FSB, to Lehman

14   Brothers Holdings, Inc.

15        Nationstar, as successor to Aurora, held a Limited Power of Attorney to execute

16   documents in the prosecution of bankruptcy proceedings.  Trial Ex. 26.

17        **2.      The Post-Remand Sale of the Note to the NRZ Pass-Through Trust X**

18        Wells Fargo as Trustee of the SARMS 2004-5 trust owned the Baroni loan until July of

19   2017.  On June 15, 2017, Nationstar issued a Notice of Termination of Trust Fund informing

20   Wells Fargo that it would exercise its right to terminate the SARMS 2004-5 Trust in July of 2017.

21   Trial Ex. 43.

22        Ownership of the Baroni loan was initially assigned to NRZ Sponsor VII LLC (NPL).

23   Trial Ex. 20.  NRZ Sponsor VII LLC (NPL) assigned the Baroni loan to NRZ Mortgage Holdings

24   LLC (Trial Ex. 8), which assigned the loan to U.S. Bank National Association, not in its individual

25   capacity but solely as Trustee of NRZ Pass-Through Trust VII (NPL).  Trial Ex. 7.

26        Shortly thereafter, a decision was made to transfer numerous loans, including to the Baroni

27   loan, to a related NRZ Pass-Through Trust.  To effect this transfer, U.S. Bank National

28   Association, not in its individual capacity but solely as Trustee of NRZ Pass-Through Trust VII

NATIONSTAR MORTGAGE LLC'S TRIAL BRIEF

1    (NPL), assigned the loan to NRZ Mortgage Holdings LLC.  Trial Ex. 6.  NRZ Mortgage Holdings

2    LLC then assigned the loan to U.S. Bank National Association, not in its individual capacity but

3    solely as Trustee of NRZ Pass-Through Trust X – its current owner.  Trial Ex. 5.  During all these

4    transfers, Nationstar remained servicer of the loan.

5         U.S. Bank issued a Limited Power of Attorney to Nationstar allowing it to demand,

6    recover, collect and receive funds belonging to U.S. Bank and sign documents to facilitate

7    servicing of the loans contained in the NRZ Pass-Through Trust X.  Trial Ex. 9.

8                              **III.  PROCEDURAL HISTORY**

9         Nationstar filed Claim 9-1 on September 17, 2012.  Trial Ex. 4.  On April 3, 2013, Ms.

10   Baroni filed the present adversary proceeding against Nationstar challenging the claim.  In her

11   First Amended Complaint, she alleges that she "does not dispute that she owes money on her

12   mortgage obligation."  Rather, she "seeks the Court's assistance in determining who the true

13   creditor is of the Note and Deed of Trust."  ECF No. 10 at ¶ 13.  The First Amended Complaint

14   alleges causes of action (1) to determine the nature, extent, and validity of lien, (2) quasi-

15   contract/unjust enrichment, (3) violation of the Fair Debt Collection Practices Act (FDCPA), 15

16   U.S.C. § 1692 et seq., and (4) violation of California Business & Professions Code section 17200.

17        Nationstar answered (ECF No. 31), and then filed a motion for summary judgment (ECF

18   No. 50).  This Court granted the motion.  ECF No. 74.  Ms. Baroni appealed.  ECF No. 76.

19        The Ninth Circuit BAP focused on the fact that the copy of the Note that Nationstar filed in

20   support of Claim 9-1 displayed a different configuration of indorsements that the copy of the Note

21   that Nationstar filed in support of its motion for summary judgment:

22            Our resolution of this appeal largely hinges on our answer to a single
              question: when a creditor, in the process supporting a proof of claim based
23            on a promissory note, presents the bankruptcy court with two materially
              different copies of the indorsements supposedly accompanying the note,
24            can the court on summary judgment correctly determine that there is no
              genuine dispute that the note has been duly indorsed in blank?  We answer
25            this question in the negative.

26   *Baroni v. Nationstar Mortg., LLC (In re Baroni)*, 2015 Bankr. LEXIS 3859 (B.A.P. 9th Cir. Nov.

27   10, 2015) at *2:13-20.  The BAP issued a memorandum opinion affirming dismissal of the

28   FDCPA cause of action but otherwise reversing and remanding for further proceedings.  *Id.*

1    As this Court subsequently explained in an order (ECF No. 216), the BAP specifically

2    contrasted this indorsement issue with several other issues that it considered and rejected as a basis

3    for reversal and remand: (i) the authenticity of James Baroni's signature on the Note and (ii) the

4    possibility that there were two or more promissory notes in existence.  First, the BAP held that

5    "[s]ignatures on negotiable instruments are presumed to be authentic and authorized, and [Baroni

6    had] not presented any evidence to overcome that presumption [in the case of the Carmel note]."

7    *Baroni*, 2015 Bankr. LEXIS 3859 at *28.  Second, the BAP held that the "summary judgment

8    record indicates that there is only one original Carmel note and that Nationstar's attorney Adam

9    Barasch is in possession of it."  *Id*. at *27.  Further, the BAP agreed with a declaration submitted

10   by Meredith DeKalb Miller, an expert witness for Ms. Baroni, which observed that "all of the note

11   copies are representative copies of the same note and that James' signature on each of the note

12   copies is consistent."  *Id*.

13       Following remand, this Court entered an Order Re: Scope of Issues on Remand delineating

14   the issues to be tried as follows:

15           1.   The First Cause of Action for Declaratory Relief on the following
                  issues only:
16
                  a.    Whether the "original Carmel note" (as defined by the
17                Panel in its Memorandum) was duly endorsed in blank and made
                  payable to the bearer and, therefore, whether Nationstar qualifies
18                as a holder of the note and a person entitled to enforce the note.

19                b.    Whether Wells Fargo, as trustee of a securitization trust,
                  owns the "Carmel note" and therefore qualifies as a nonholder in
20                possession of the note with rights of a holder under UCC § 3-301
                  and the related issue of whether Nationstar is Wells Fargo's agent
21                with respect to the "Carmel Note;"

22           2.   The Second Cause of Action for Quasi Contract / Unjust
                  Enrichment which this Court will treat as a quasi-contract claim
23                seeking restitution; and

24           3.   The Fourth Cause of Action for Violations of California Business
                  & Professions Code § 17200 *et seq*.
25

26   ECF No. 149 at 2:11-18.  Accordingly, this Court granted Nationstar's motion in limine to

27   preclude Meredith DeKalb Miller from testifying about the authenticity of James Baroni's

28   signature on the original Adjustable Rate Note and on a loan application form as she has already

1    testified as to its validity.  ECF No. 216 at 7-8.

2                            **IV.  APPLICABLE LAW**

3    **A.    Standing to enforce a secured promissory note.**

4                  Generally, a person is entitled to file a proof of claim based on a secured promissory note if

5    that person is a "person entitled to enforce" the note under California Commercial Code section

6    3301.  *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 902 (9th Cir. BAP

7    2011); *Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559, 565 (9th Cir. BAP 2012).  At least two

8    ways exist in which a person can acquire "person entitled to enforce" status.  First, to enforce a

9    note under the method most commonly employed, the person must be the "holder" of the note.

10   Cal. Comm. Code § 3301(i).  Second, a person may enforce the note if it becomes a "nonholder in

11   possession of the [note] who has the rights of a holder."  Cal. Comm. Code § 3301(ii).  Nationstar

12   will show that it qualifies a "person entitled to enforce" under both standards.

13   **B.    Nationstar is the "holder" of the Note.**

14                 A person is a "holder" of a note if the person possesses the note and either (i) the note has

15   been made payable to the person who has it in his possession, or (ii) the note is payable to the

16   bearer of the note.[1]  Cal. Comm. Code § 1201(b)(21)(A).  "The obligation evidenced by an

17   instrument payable to bearer runs to the person possessing the instrument.  Thus, any person in

18   possession of a payable to bearer instrument is its holder including thieves or finders."  5

19   Hawkland, Miller & Harrell, *Uniform Commercial Code Series*, § 3-301:1, p. 370 (2018).  "This

20   determination requires physical examination not only of the face of the note but also of any

21   indorsements."  *In re Veal*, 450 B.R. at 911.

22                 The Commercial Code provides that signatures on a note are presumed authentic:

23                        (a) In an action with respect to an instrument, the authenticity of, and
                          authority to make, each signature on the instrument is admitted unless
24                        specifically denied in the pleadings. If the validity of a signature is denied
                          in the pleadings, the burden of establishing validity is on the person
25                        claiming validity, but the signature is presumed to be authentic and

26   _____

     [1] "Bearer" means a person in possession of a negotiable instrument, document of title, or
27   certificated security that is payable to bearer or endorsed in blank.  Cal. Comm. Code
     § 1201(b)(5).
28

1  authorized unless the action is to enforce the liability of the purported
2  signer and the signer is dead or incompetent at the time of trial of the issue
   of validity of the signature….

3  (b) If the validity of signatures is admitted or proved and there is
   compliance with subdivision (a), a plaintiff producing the instrument is
4  entitled to payment if the plaintiff proves entitlement to enforce the
   instrument under Section 3301, unless the defendant proves a defense or
5  claim in recoupment….

6  Cal. Comm. Code § 3308(a).[2]  Further, the Commercial Code states that when a fact is presumed,

7  "the trier of fact must find the existence of the fact unless and until evidence is introduced that

8  supports a finding of its nonexistence."  Cal. Comm. Code § 1206.

9      The First Amended Complaint appears to expressly admit the authenticity of Mr. Baroni's

10 signature on the Note.  ECF No. 10 at ¶ 4.  It neither admits nor denies the authenticity of the

11 indorsements.  Ms. Baroni did, however, challenge the indorsements in opposing Nationstar's

12 motion for summary judgment, and as noted, the BAP denied the motion due to the differing

13 copies of the indorsements filed in this litigation.  The BAP explained:

14      Barasch did not specify [in his declaration] whether the indorsements
        appear on the back of the note's signature page or whether they appear on
15      a separate piece of paper attached to the note, which would made the
        indorsements an allonge….Either way, when as here the debtor
16      legitimately contests the validity of the indorsements, the bankruptcy court
        is obligated to physically inspect them.

17

18 *Baroni*, 2015 Bankr. LEXIS 3859 at *23.

19      This Court's examination of the Note will readily show that the indorsements are valid.

20 The indorsements are clearly "wet-ink" originals.  They are on the reverse of the signature page

21 bearing Mr. Baroni's signature, not an allonge attached to the Note.  There is no indicia of fraud or

22 tampering.

23      That a photocopy of the Note with a differing configuration of indorsements appears in the

24 collateral file and was filed in this litigation does not show that the indorsements on the original

25 Note are forgeries.  As discussed above, Nationstar will show that the photocopied indorsements

26 _____

27 [2] This applies to the signature of the obligor as well as to the signatures of any endorsers.  5
   Hawkland, Uniform Commercial Code, § 3-308:2, pp. 550-551.

28

1  were likely the result of a mistake when the loan was serviced by Aurora Bank, FSB.  Ms. Baroni

2  has suggested malfeasance.  Nationstar strenuously disagrees, but whether the circumstances

3  leading to the photocopied indorsements involved wrongdoing does not bear upon this Court's

4  inquiry into the authenticity of the indorsements on the original Note.  Moreover, it is noteworthy

5  that the same two Lehman indorsements appear on both the original and the photocopy; only the

6  configuration is different.

7       This Court's conclusion that the indorsements are valid will mean that Nationstar is its

8  "holder" and thus a "person entitled to enforce" the Note.  Cal. Comm. Code §3301(i).

9  **C.      Nationstar is the "transferee" of the Note.**

10       Even if the Court were to conclude that the indorsement to blank is invalid, Nationstar is

11  still a "person entitled to enforce" the Note because it is a "nonholder in possession of the [note]

12  who has the rights of a holder.  Cal. Comm. Code § 3301(ii).  A person becomes a nonholder in

13  possession when he takes possession pursuant to a "transfer" of the promissory note, as opposed to

14  a "negotiation," as occurs when a note is indorsed and delivered.  *See* Cal. Comm. Code § 3201

15  (definition of negotiation).  A "transfer" of a note "vests in the transferee any right of the

16  transferor to enforce the instrument."  Cal. Comm. Code § 3203(b).

17       Commercial Code section 3203(a) states that a note is transferred "when it is delivered by

18  a person other than its issuer for the purpose of giving to the person receiving delivery the right to

19  enforce the [note]."  Accordingly, "[a] transfer has two requirements: the transferor (any person

20  that transfers the note, except the issuer) must intend to vest in the transferee the right to enforce

21  the instrument (thieves and accidental transferees are excluded) and must deliver the instrument so

22  the transferee receives actual or constructive possession." *Anderson,* 424 Md. at 248; see also *In re*

23  *Veal,* 450 B.R. at 912 ("Without holder status and the attendant presumption of a right to enforce,

24  the possessor of the note must demonstrate both the fact of the delivery and the purpose of the

25  delivery of the note to the transferee in order to qualify as the 'person entitled to enforce'").

26       There is no question that Nationstar satisfies the second requirement of possession of the

27  original Note.  That leaves the first – the transferor's intent to vest Nationstar with the right to

28  enforce the Note so that it is the proper person to enforce the Note.

1    To answer this question, the Court may look at the surrounding circumstances regarding

2 the delivery of the notes to infer the intent of the parties.  *Fed. Deposit Ins. Corp. v. Ashmore*, 698

3 F. App'x 286, 292 (6th Cir. 2017).  This is especially true when, as here, the transferors include, "a

4 presently defunct bank . . . because the likelihood of a paper trail relating specifically to the

5 purpose of the parties at the time of the delivery is minimal."  *Id*.  Accordingly, the only question

6 here is whether the delivery of the Note to Nationstar was deliberate, rather than "by theft or

7 accident."[3]  *Anderson,* 424 Md. at 248; see also 5 Hawkland, Uniform Commercial Code, § 3-

8 203:2, p. 296 ("Because of these requirements, neither a thief, a person obtaining possession by

9 mistake, nor a person possessing the instrument in trust for the transferor are transferees").

10 Finally, the Court may infer that delivery was deliberate absent evidence to the contrary.

11 *Anderson,* 424 Md. at 248 ("[n]o entity in the Note's transfer chain is claimed to have acquired

12 possession of the Note by theft or accident"); *Ashmore*, 698 F. App'x at 293 ("this string of emails

13 does not present any fact from which a juror could reasonably infer that the delivery of the Note

14 was for any purpose other than to allow the Bank to execute it").

15    Nationstar is such a transferee.  U.S. Bank, the custodian of record, delivered the collateral

16 file containing the Note to Nationstar on or about November 2, 2016.  Nationstar forwarded the

17 collateral file to its counsel Adam Barasch to facilitate enforcement of its claim in Ms. Baroni's

18 bankruptcy proceeding.  Thus, Nationstar was delivered the Note to enforce it.  See *J.E. Robert*

19 *Co. v. Signature Properties, LLC*, 309 Conn. 307, 330 (2013) ("these provisions clearly support

20 the trial court's conclusion that it was LaSalle's intention to deliver the note to its special servicer

21 ⸻⸻⸻⸻⸻⸻⸻⸻⸻⸻⸻⸻⸻

22 [3] The only circumstance where a party may intentionally deliver a note without providing intent to
for the party taking delivery to enforce the note is when the note is transferred for safekeeping.

23 See 5 Hawkland, Uniform Commercial Code, § 3-203:2, p. 296.  This is not the normal case, and
barring evidence of such intent, this Court should presume the party entitled to enforce for the purpose

24 of enforcement.  *Ashmore*, 698 F. App'x at 294 ("there is nothing in the record that would allow a
jury to draw a reasonable inference that the purpose underlying the delivery was to allow the Bank

25 to hold the Note in trust").  Further, in such cases where the note is delivered for safekeeping, the
party for whom the note is held in safekeeping remains the party entitled to enforce the note.  *Bank*

26 *of New York v. Raftogianis*, 418 N.J. Super. 323, 331, 13 A.3d 435, 440 (Ch. Div. 2010) ("A
number of cases recognize that there can be constructive delivery or possession, through the

27 delivery of the instrument to an agent of the owner").

28

NATIONSTAR MORTGAGE LLC'S TRIAL BRIEF

1    'for the purpose of giving to the person receiving delivery the right to enforce the instrument'").

2    Nationstar is therefore a "person entitled to enforce" the Note, even without the indorsement to

3    blank.

4            Further, while Nationstar did not directly take possession from Platinum Capital Group,

5    the original holder, Nationstar can demonstrate intent to enforce by providing evidence that it

6    acted as servicer for the purchaser of the Baroni loan when Nationstar took physical possession of

7    the Note.  As was noted by the *Veal* Court, one common instance of an Article 3-203 transfer is "a

8    sale of notes in bulk without individual indorsement of each note—that other person (the

9    transferee) obtains from the holder the right to enforce the note even if no negotiation takes place."

10    *Veal*, 450 B.R. at 911.  Thus when delivery of a note is done in conjunction with a memorialized

11    transaction, that is nearly conclusive evidence of intent to transfer the right to enforce the note.

12    *See Ashmore*, 698 F. App'x at 291 ("the duly executed Assignment provides overwhelming

13    evidence that the delivery of the Note by Citizens to the Bank was for the purpose of giving the

14    Bank the right to enforce the Note").

15            At the summary judgment phase, Nationstar thus sought to establish that it took possession

16    as agent for the SARMS 2004-5 Trust, the owner of the Note by assignment.  Nationstar asserted

17    that this series of transactions was sufficient evidence that the transfer of the Note to Nationstar

18    was intentional and not "by theft or accident."  The BAP did not disagree with Nationstar's legal

19    reasoning.  The BAP, in fact, concluded that had Nationstar demonstrated that the "note was

20    transferred to the [SARMS 2004-5] securitization trust," Nationstar would have prevailed on its

21    transferee claim.  *Baroni*, 2015 Bankr. LEXIS 3859  at *11.[4]  However, the Court found that, due

22    to evidentiary failures, "Nationstar did not establish, for summary judgment purposes or

23    otherwise, that Wells Fargo owned the Carmel note and that Nationstar was Wells Fargo's agent

24

25    [4] "Nowhere in the Hyne declaration or in the exhibits attached thereto is there any competent
evidence demonstrating that ownership of the Carmel note was transferred to the above-referenced
securitization trust. In the absence of such evidence, Nationstar did not establish, for summary
26    judgment purposes or otherwise, that Wells Fargo owned the Carmel note and that Nationstar was
Wells Fargo's agent for purposes of servicing the Carmel note."  *Baroni*, 2015 Bankr. LEXIS 3859
27    at *11.

28

1   for purposes of servicing the Carmel note." *Baroni*, 2015 Bankr. LEXIS 3859 at *11. Nationstar

2   will rectify any such errors at trial by establishing that it acted as servicer for the SARMS 2004-5

3   trust. Therefore, the Note was transferred to Nationstar for the purpose of enforcing the Note,

4   rather than by any accident as Ms. Baroni may allege (but has no evidence to prove).

5       Further, the fact that the Baroni Note was again sold in July of 2017, after the remand from

6   the BAP, has no bearing on the resolution of this trial. The Official Commentary of the U.C.C.

7   explains that the "transferee" entitled to enforce a note is not necessarily the same as its owner:

8           Although transfer of an instrument might mean in a particular case that
            title to the instrument passes to the transferee, that result does not follow
9           in all cases. The right to enforce an instrument and ownership of the
            instrument are two different concepts. . . Moreover, a person who has an
10          ownership right in an instrument might not be a person entitled to enforce
            the instrument.

11

12  Official Comment 1 to U.C.C. § 3-203.

13      When the Note was sold in July of 2017 from the SARMS 2004-5 trust, physical

14  possession of the Note was not transferred. The Note remained in the hands of Adam Barasch, as

15  agent and bailee for Nationstar. Nothing in the UCC or California Commercial Code states that a

16  transferee can lose its right to enforce the Note solely because ownership of the Note was

17  transferred without physical transfer of the Note. "Under this definition of transfer, a transfer does

18  not take place without actual delivery of the instrument into the transferee's physical possession."

19  *Cynthia Annette Riley Dudley v. S. Virginia Univ. (In re Dudley)*, 502 B.R. 259, 276 (Bankr. W.D.

20  Va. 2013). Accordingly, as Nationstar, through Adam Barasch, remained in physical possession

21  of the Note post-sale, any post-sale assignments of title are irrelevant to the right of Nationstar to

22  enforce the Note.[5]

23  _____

24  [5] The UCC sets forth a hypothetical that establishes this point in its commentary to section 3-203.

25          X is the owner and holder of an instrument payable to X. X sells the
            instrument to Y but is unable to deliver immediate possession to Y.
26          Instead, X signs a document conveying all of X's right, title, and
            interest in the instrument to Y. Although the document may be
27          effective to give Y a claim to ownership of the instrument, Y is not a
            person entitled to enforce the instrument until Y obtains possession
28  (footnote continued)

1    Finally, Nationstar need not show that any of the transfers were for value or that the

2  promised consideration was paid.  If Ms. Baroni is alleging there was some type of breach of the

3  contract, she has no standing to assert that. "For a contract to be enforceable by a third party, a

4  contract with another must be made expressly for the benefit of the third person." *Aguilera v.*

5  *Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000).  None of the contracts at issue

6  expressly make Ms. Baroni, or any individual borrower, a beneficiary.

7    Similarly, if Ms. Baroni is asserting that the assignments of the Notes fail for lack of

8  consideration, she also lacks standing to assert such a claim.  "A contract may be rescinded if all

9  the parties thereto consent . . . If the consideration for the obligation of the rescinding party fails,

10  in whole or in part, through the fault of the party as to whom he rescinds." Cal. Civ. Code § 1689

11  (emphasis added); see also *Fugelsang v. Fugelsang*, 131 A.D.2d 810, 811 (1987) ("failure of

12  consideration gives the disappointed party the right to rescind the contract").  No party is seeking

13  to rescind any of the contracts at issue and Ms. Baroni may not do so in their stead.

14    Indeed, the Commercial Code specifically contemplates that a transfer may not be for

15  value: "Unless otherwise agreed, if an instrument is transferred for value and the transferee does

16  not become a holder because of lack of indorsement by the transferor, the transferee has a

17  specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of

18  the instrument does not occur until the indorsement is made." Cal. Comm. Code § 3203(c)

19  (emphasis supplied).

20    Notably, and contrary to Ms. Baroni's assertion, demonstrating "transferee" status does not

21  require Nationstar to show the chain of title by which the current owner obtained an interest in the

22  Note.  Instead, Nationstar must only provide enough evidence to show that the transfer of the Note

23  to it was intentional and not by "theft or accident."  Nonetheless, Nationstar will show that the

24  current owner of the Note is U.S. Bank, not in its individual capacity but solely as trustee of NRZ

25  _____

26        of the instrument. No transfer of the instrument occurs under Section
        3-203(a) until it is delivered to Y.

27  Official Comment 1 to U.C.C. § 3-203.

28

1  Pass-Through Trust X, and that Nationstar services the Note on its behalf.

## V.  MS. BARONI CANNOT SHOW THAT SHE IS ENTITLED TO RESTITUTION

A common element of both Ms. Baroni's unjust enrichment and Business & Professions Code section 17200 claims is that she has paid money to Nationstar that must be returned. However, Ms. Baroni has no evidence that she has paid anything to Nationstar.  Even if she prevails on her claim to extinguish the lien, she is not entitled to restitution.  The two claims must therefore fail.

"The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." *Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal.App.4th 1105, 1132 (2014) *as modified on denial of reh'g* (Feb. 27, 2014) (*quoting Otworth v. Southern Pac. Transportation Co.*, 166 Cal.App.3d 452, 460 (1985).  "The elements of an unjust enrichment claim are the receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593 (2008).

An action for unfair trade practices under Business & Professions Code section 17200 arises when a business practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *Wolfe v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 4th 554 (1996).  Damages are not an available remedy for violation of Business & Professions Code section 17200.  The sole remedy available is restitution of money or property wrongfully obtained.  *Inline, Inc. v. Apace Moving Systems, Inc.*, 125 Cal.App.4th 895 (2005).

As noted, Ms. Baroni is not the "borrower" on the loan and is not personally liable for the debt.  She does not intend to introduce any documentary evidence showing that she paid money to Nationstar.  Without payment of money or other property, she is not entitled to restitution.  Both claims must fail.

## VI.  STIPULATED AND DISPUTED FACTS

Nationstar acknowledges that the Court expects attorneys to describe stipulations and disputed factual issues.  However, the parties have not been able to reach stipulations.  Nationstar

1  understands that Ms. Baroni will not assert that a specific person other than Nationstar is the true

2  person entitled to enforce the Note.  She instead takes the position that Nationstar cannot prove

3  standing, and accordingly objects to every trial exhibit on nearly every possible ground – even

4  including Claim 9-1 itself.

## VII.  CONCLUSION

6         Nationstar is both the "holder" of the Note and its "transferee."  Either way, it is a "person

7  entitled to enforce" the Note and has standing to file Claim 9-1 in Ms. Baroni's bankruptcy case.

8  Her adversary claims should be denied.

9  DATED:  October 17, 2018                SEVERSON & WERSON
                                            A Professional Corporation
10

11

12                                          By:        /s/ Bernard J. Kornberg
                                                     Bernard J. Kornberg
13

14                                          Attorneys for Creditor NATIONSTAR MORTGAGE
                                            LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

A true and correct copy of the foregoing document entitled (*specify*):  NATIONSTAR MORTGAGE LLC'S TRIAL BRIEF; COPIES OF UNPUBLISHED OPINIONS  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 17, 2018  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Richard L Antognini      rlalawyer@yahoo.com
•Adam N Barasch      anb@severson.com, dgl@severson.com;nye@severson.com
•Eric Bensamochan      eric@eblawfirm.us
•Bernard J Kornberg      bjk@severson.com, elw@severson.com
•Michael S Riley      mriley8@aol.com, 10986aa@gmail.com
• United States Trustee (SV)      ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 17, 2018 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**\*By Email\***
Harry A. Olivar
harryolivar@quinnemanuel.com

**\*BY DELIVERY\***
Judge Martin R. Barasch
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 17, 2018 | Bernard J. Kornberg | /s/ Bernard J. Kornberg |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**